by appointment for Mr. Quarles or Mr. Reynolds, as the case may be. The district court misapplied the docket factors, and it required Mr. Quarles to show actual prejudice from the delay. Could you help me with something on prejudice? I was thinking, what if I were representing this fellow? What would the prejudice be? Well, what it would be is, I can't get my client to roll over on somebody else and get a deal. Right. So there was... Is that countable? Can you count that as prejudice? You know, I don't know the answer to it. Usually you think of actual prejudice as witnesses dying. I know all this formal stuff, but in real life, he looks like one of the smaller players, and he loses his chance to get a deal for as testifying for the government. And so in any event, he couldn't show actual prejudice. But under Doggett, of course, Doggett says, hey, a real long passage of time creates a presumption of prejudice and strengthens it as you go along. Stick with what the prejudice is for a moment. So there is no authority for what I was thinking of as the real prejudice, not being able to get a deal for testifying. I don't know of any in the cases. I know that defense lawyers have argued it. But you don't know if there's any authority one way or the other on whether it's good? I don't, Your Honor, no. Okay. Now, another thing that occurred to me is real life prejudice, but I don't know if it's countable. I don't know what the authorities say, is things change in five years, life changes. Somebody who was a dope dealer five years ago may be a pimp today. That was what the guys in prison said. He may not be dealing dope anymore, or he may have even shaped up. Can you count that kind of thing as prejudice, or is it just those three factors in Doggett? I think as far as the Supreme Court goes, it's an open issue. I have found some district court authorities on whether somebody's change in life circumstances could be counted. It doesn't help me a lot. I believe in the Doggett. And one of the Doggett opinions may have been a dissent. It was left as an open issue. So what you've got in terms of authority is his ability to try his case is likely impaired by the extent of the delay, and there's a presumption because it was such a long delay. I think the best I can give you is I've got atmospherics in the sense that there's some evidence that he was getting married, having a kid, getting credit, you know, holding a job. But, again, it's not a decisive bit of authority I can present to the Court. What I'm saying to the Court is that the delay here was long enough under Doggett so that Mr. Quarles was entitled to a strength in presumption. Under the – I'll just focus on – Tell me how the strength in presumption works. It's sort of an interesting concept. A lot of times when we say we presume prejudice, we start from a presumption. It doesn't talk about the strength of the presumption. But it seems in this context you have sort of a sliding scale of presumption, that it gets stronger as it gets – as the time passes. How does that work in application in the district court? How is the district court supposed to take the strength of the presumption and weigh it against the other factors? It took me a while to figure that out from Doggett, but here's how I think it works. We said that the district court made a mistake because it didn't do the two-step process of the length of delay analysis. I think it works as follows. You see, first of all, whether there's a presumptively prejudicial delay. Is it a year? According to the Supreme Court, courts of appeal seem to focus on about eight months. Your – the Ninth Circuit's Beeman case is an example where it talks about eight months as kind of being that presumptively prejudicial. If it does, it triggers an analysis of all the other factors. Step two under Doggett is you then look at the overall delay and maybe as a multiple of the initial trigger amount. So, for example, here you have a 56-month delay. If the initial trigger amount is eight months, you're talking about seven times the presumptively prejudicial amount. I think under Doggett, the district court would then say, okay, I've got to assess where this far along the presumption of prejudice has been strengthened by no amount, however, and it's got to throw that into the mix of other factors. In the United States against Shell case, the Ninth Circuit's case, you had a slightly longer delay, 69 months, about five years of which was caused by the government misplacement file. Here we have the government destroy-in files negligently. And the court there said it was a strong presumption and the government has to persuasively rebut it. We would say here as a strengthened presumption, not as strong as the one in Shell because you've got 69 months versus 56, but a strengthened presumption that should go into the mix. Instead, you have the district court simply not doing an analysis. Instead saying, you know what, yes, it triggers the initial look, but it doesn't do much else. It's not uncommonly long because, after all, 56 months, but the statute of limitations is 60. They could have waited four more months to indict him, and so why should I dismiss the case? And we said, no, that's not the analysis. Let me follow up. Go ahead. I'm sorry. The ‑‑ I think the government is going to say, well, the most that we could say the delay is here that the government might be responsible for is 26 months. That really doesn't change your argument too much, I guess, because you still say it's a lot longer than 8 months. It's a strong presumption. The court should have applied it. And I think you go, pardon me, one step further, and you say, and the burden should have been on the government to disprove the presumption, not on the defendant to then go forward and say, well, not only do I have the presumptive presumption, but I've got actual prejudice as well, and here it is. You're saying we shouldn't do that. We ought to put the burden on the government until we've got the presumption. I think so, because I don't really have any actual prejudice finding or presentation to show you, but I think under your test, you've got ‑‑ basically, he's indicted in December of 98, for a month, the DEA, which is the charging agency, does something. They try to find him before they take down the wire, and then they hand it off to the marshals. Protocol says, we don't go out into the field and look if we pass it off to the marshals. Obviously, they don't want two agencies shooting at each other, right? So the DEA is not supposed to be looking. They have to clear it with DEA counsel if they go out to the field. So instead, all you have for 55 months is what follows. Nothing by the marshal service. They can't prove it because their files were negligently destroyed. The files may show that they got leads and totally ignored them. Why should quarrels have to take the risk of that? Let's get down to the court when you present all that stuff. Suppose Mr. Reynolds says, okay, I'm entitled to the presumption. Sit down. It's presumptively prejudicial. I sit down. And so then the gentleman would have to show that there was no prejudice. Did that happen in this case? I don't believe so. The way the district court had formulated the test, of course, we didn't really go there because the district court said no actual prejudice. In my view, the government would have had to persuasively rebut it under Schell, and it would be one factor that goes into the mix. So the third factor went to Mr. Quarles. I got that. The first factor, I think, should have gone to him because the district court didn't analyze the total length of delay. It didn't do the second thing. Well, the law seems to be that in addition to the presumption of prejudice, the defendant can't just sit still. He then has to go forward and show actual prejudice. That is, if the delay is not long enough to trigger the strengthened presumption. And that's what Doggett is all about. Doggett says if the defendant is unaware, and in this case we have Mr. Quarles being unaware, the district court found he didn't know, which is why we said that the reliance on Aguirre was the wrong way to go for the district court, because Aguirre is a case where the defendant knew he was being charged. He lied. He submitted an affidavit saying, I'm coming back to the United States, but not till January. He then sneaks in in November, stays for a long period of time, and he finally gets caught. He tells the district court, he lies to the district court judge, and he says, my lawyer told me it was all cleared up. Then the lawyer comes in and said, I wasn't even representing the guy. So I think that the problem for the district court here was looking at Aguirre because that's a very low benchmark. If the defendant has that much to blame, you're not going to put the government through a lot of hoops. It's enough that they just put in his name, check NCIT, and see if he's there. Here, all they do is they put in his name, they check. In fact, they have to call the marshals because the information is wrong. That's all they do. They never do the credit check that would have found him. The evidence is clear on that, at least as of April of 1999. So we're saying that stuff together isn't enough to be sure to believe the but presumption, especially when you look at the second factor, which is who's more to blame. And if Mr. Quarles didn't know about the indictment, his contribution to the delay is, guess what, zero. All I have to show is that the government's contribution is greater than zero. And I got that because there are degrees of diligence. And here, I really don't see how the district court found diligence, but there's a lot of diligence. Here, the diligence was the DEA did nothing in the field, U.S. Marshals did nothing in the field for 55 months, and except doing some computer checks and talking to some guys, and when they talked to them, they didn't even follow up on that information. Except the guys in San Pablo, they didn't check San Pablo. And I just don't see it. Before you sit down, I just have one – I want to follow up on one of Judge Kleinfeld's questions, which is sort of interesting to me because this is a little bit different case. But as we have this shifting presumption, is there some point when we take into consideration those aspects of prejudice that might not rise to actual prejudice under a strict analysis? For example, you've talked about, I think, what you call the atmospherics, the change in lifestyle, or perhaps, Judge Kleinfeld, the loss of an opportunity to make a deal. When we consider this, when the district court consider this in the mix, even though if standing alone those wouldn't constitute actual prejudice absent a presumption, is that something that the district court can consider in this mix? Because this is, I think, in a different – this case is different. It may present that scenario. The answer to that is I don't really think I can – I wish I could say, yes, I'm not entirely sure. I believe that under Doggett, at least my understanding of it now, is that the presumption of prejudice essentially comes from the impact, the erosion of time on the ability of the defendant to present his case. I can't tell you that I think that the – what's behind the Doggett presumption or the strengthening of the presumption is, hey, the guy, you know, the guy, he became a priest and he's – No, I guess what I was suggesting is that in analytical terms, perhaps, as the presumption strengthens, the fact that you then take what might otherwise be a somewhat weak actual prejudice argument, that does that entitle the district court to give that more significance? Or does it – to put it another way, does it lower your threshold of rebutting the government's argument if you have a strong presumption of prejudice? I think if the Court wanted to formulate the test in that way, it would be you could make a sensible formulation. I can't tell you that I can shake that out of your view, Court, sir. Oh, no, I understand that. I understand that. Thank you, counsel. Thank you. Although your time is up, does the Depellent have a chance to rebut? We'll give you one minute in this case. May it please the Court, good morning. My name is Alexis Hunter, and I represent the United States in this matter. As the Court is aware and as counsel has alluded to, Quarles raises only one issue on appeal, and that's the 50-year-old case. Could you talk a little louder? Yes. Could you move the mic just a little bit? There you go. Quarles raises only one issue on appeal, whether or not the 56-month delay was long enough to justify dismissal of the indictment. Could you answer the same question for me as I asked your adversary? Is there any authority one way or the other on whether loss of the chance to snitch somebody out or the changes in life that ordinarily happen in five years can be counted as prejudice? The as the first part of your question, Your Honor, no. There's no authority that I know of that points to whether or not the defendant lost an opportunity to cooperate. Either way. There's no authority in favor or no authority against, right? Correct. However, I will note as to the other part of your question, change in circumstances. In the Doggett case, we noticed that there was a change in circumstances for the defendant. He had been charged with being, in essence, dealing drugs, and then, upon his return to the United States, basically six years after the indictment, there were significant changes in his life. He had a job, he got a college degree, he got married. So I would say that those are factors where you would argue that he made positive changes. However, the Court didn't consider that in going through its analysis, whether or not that made a difference. Could you help me with something else? Because I remember they had his address from his cell phone records. I'm wondering, did they ever go out to his house and just wait around for him for a day or so? Well, Your Honor, the addresses that they had were the addresses pertaining to, as you indicated, the pager and the cell phone number. And those were the two addresses that they went to, one of which was his sister's address, and that was the January 14th, 1999 interview of the sister. And the other one? And the other address was an address, the pager address, that went back to a woman by the name of Melissa Morrison. And again, they conducted surveillance at least on one occasion there and didn't find him there. It looks like there are a bunch of things that bothered me in terms of the diligence that made it hard for me to accept the district judge's view, and I'd like you to comment on them. It looks as though far from trying to evade, Reynolds actually called the, I think it was the marshals, and they didn't tell him that they had an arrest warrant out. They said, why don't you come down here? And I was thinking, if somebody asked me to waste an afternoon and didn't tell me why I should or had to, I'd figure it's my afternoon, not theirs, wouldn't go. And they could have found him with a credit check, and they didn't even follow up on the tip that they got about him being a pimp in some town, I forget where. And his name worked fine on the travel stuff, and he'd had the same job and the same home for years. And it looks like the DEA didn't even give his social security numbers, the one real one maybe and the two others he was using, to the marshals, which could have turned him up. That way, I don't understand what the diligence is. It looked like nobody did anything. Well, Your Honor, if I can take a moment to go through and answer your question as I explain the different things that the DEA did do. They went by the mother's house and the sister's house in an attempt to interview them to find out where he was. Well, not just attempting. As I understand it, they were both cooperative. Well, Your Honor, the sister said she didn't know where he was. The last time that she had spoken to him was in Christmas of 1998. She then contacted his ex-girlfriend. When they asked her if they could speak to the ex-girlfriend or if she would provide the contact information, the sister refused. The mother said that she didn't know where he was, but that she would pass on his information. Quarles then calls, or somebody alleging to be Quarles calls the DEA. That's evidence that the mother did indeed pass on the information. That's correct, Your Honor. And that individual, or Quarles, indicated that he would come down to the DEA. Why do you say that individual? Is there any indication it's not Quarles? Well, DEA agent Bryson indicated that he wasn't certain if the voice was Quarles. Right, but I mean, there's no other independent evidence that's not Quarles. That's correct, Your Honor. And there's no alternative hypothesis of who it might be, right? Correct. Okay. And the reason why the DEA didn't say come down to the station because we want to arrest you is because their fear that he would flee. Agent Bryson did indicate that he wanted him to come down to talk about the Johnny Lee Barnes case. And Quarles responded that he would not. Fair enough. Good reason not to tell him. But still, I have trouble putting him in the category of a fugitive, because at this point, he's still – there's still no evidence. He knew that there was a warrant out for him. Right. Well, Your Honor, one might argue that the fact that he had – you're correct. The government did not prove that there was any specific evidence that he knew of the indictment. In fact, he submitted a sworn declaration saying that he didn't. But I'd like to go back to your other point, Your Honor, in terms of the two individuals in jail. That information couldn't be followed up on. One of the individuals gave a partial license plate number. They couldn't do anything with that license plate number. The – both of the individuals gave general information about he may be in San Pablo, he may be in Las Vegas, he may be in San Francisco. I thought they said he was working as a pimp and that there was some particular – I don't know if it was a strip joint or what in some relatively small town. I was thinking there couldn't be that many. Well, they said that – Just go out there, have a beer, and ask if anyone's seen him. They did find information that he was a pimp, or that's the information that was given by both sources, and that he was possibly pimping in either San Francisco, Las Vegas, San Pablo. Those were the three areas that were mentioned, Your Honor. But I will note that – What about the bankruptcy? I mean, he goes and files in 2001, according to his testimony, a Federal voluntary petition of bankruptcy where he says, here's where I am, notice is served on the United States, he's subject to the jurisdiction of the United States trustee. He tells everybody, here I am. He tells the United States, here I am. What do we make of that? Well, Your Honor, at the time – You can say, well, the left hand didn't know what the right hand was doing, but in terms of counting it, I found that hard to ignore. Well, Your Honor, at the time, I believe when he filed for bankruptcy, he also filed for bankruptcy under the name Lortez Reynolds. So we have here, Quarles using two different names at different times. He has multiple dates to verse, Social Security numbers. In addition, I think there's some testimony that although he says he was living there consistently at that Rumsfeld address since 1996, that actually his wife testifies that it was really not consistently until 1999. The names thing, I thought one was his mother's name and one was his natural father's name. That's correct. It wasn't like a made-up alias? No, it wasn't a made-up alias. Well, the government had the AKAs, right? He had an AKA in Taz. Yeah. And then, of course, sometimes went by Lortez, Deshawn, Quarles, or Reynolds. But, Your Honor – Yes. Just it looks as if, from all this evidence that's in the case, that the government was chargeable, if you will, or responsible for a good deal of the delay, or maybe not 56 months, maybe 26 months, but long enough for a presumption of prejudice to arise. Now, if that is the case, doesn't that entitle the defendant to then just stay at the counsel table, say there's a presumption of prejudice, prejudice is now before the court? Then it would seem to me the government would have to come forward and rebut that presumption. And if it did so, I suppose that would show there was no actual prejudice. And that seems to be the ultimate test, to show there's an actual prejudice. That is correct, Your Honor. And underlying that – Did you rebut the presumption of prejudice in the district court? Or maybe it was not phrased in that – structured in that way. Your Honor, that issue didn't come up. Quarrels didn't make an actual showing. The government argued that because it had been diligent, there was no need to actually rebut the presumption. But I believe – So if we were to disagree with that conclusion of the district court, the proper remedy would be to remand and allow the district court to proceed under the presumption of prejudice, assessing its strength, and then let things unfold as Judge Thompson describes, right? Yes, Your Honor. But I believe, Your Honor, that there is information in the record before this court that would show that the government could rebut the presumption. First of all, you have no actual showing or clear idea of what the prejudice is. One, if you go through what the various protections or interests that the court is inclined to look at, he had not been incarcerated until the time of his arrest. He had not – he had no knowledge of the indictment or prior to his arrest. So you take out the first two areas of interest, whether there was any anxiety or concern or oppressive pretrial incarceration. In terms of witnesses, there were no witnesses, or it seems that there were no witnesses that were unavailable or that memories faded. In fact, you had the co-defendants in this case. Their case was still pending at the time that he was arrested and actually was not final until 2005, so one might be able to argue that those associated with the case would still have a memory and still be able to testify and still be available. There were co-defendants who – the cases from his 5-year-old indictment were still not tried yet? There were co-defendants, primarily Johnny Lee Barnes, Garland Cullum, and Stephen Henderson, who had moved to contest or suppress the wiretap. And so that was before the Ninth Circuit and had not been resolved until April of 2005. So no other defendants – Wait a minute. Before the Ninth Circuit, did they lose on a motion to suppress? The case went to trial. They were convicted, and then they appealed. Is that what you mean? They took a plea. They pleaded? They took a plea and had – Reserving the suppression issue? Correct, Your Honor. I get it. No other defendants went to trial. I keep being distracted by real life from the various theoretical categories. And I was thinking, how would you defend this guy? Number one option, snitch somebody out. Number two, try to find witnesses to show he had some legitimate reason for calling the dope dealer and it wasn't really about dope and it was something innocent that just sounded kind of bad. And I was trying to think, if you had that kind of witness, number one, pretty hard to find after five years. Number two, you wouldn't want to tell the government since you may lose on this appeal. I suppose that's what a presumption is for, in part. Is there any authority on – I guess the witness thing would fit within dogged. Is there any authority on any of those other ideas and is there any indication of what the defense might be? Not that I'm aware of, Your Honor, and I believe his one defense was, and this is the one that he attempted to raise, was that he was a pimp and not a drug dealer. And so that was one of the defenses. And, Your Honor, I would like to address the point, if I may. You're way over time, so I think I'll – but everything in the brief is preserved, unless my colleagues want to hear. I thank you. Thank you, counsel. Let me use 30 seconds of my 60. The panel asked whether there was any evidence in the record of who actually called the agent, if you remember. And Mr. Quarles did submit a declaration in which he denied having any contact with anybody, and that's in the excerpts of Record 149. I don't know how the panel is going to weigh that, but you should be aware of that. What's the page number? 149, so there is evidence on it. The agents did contact the mother, did contact the sister, asked about Mr. Quarles, didn't say he was indicted. So that information at least was never conveyed. Finally, I would say that if the court is inclined to stand by what we believe is the proper formulation of the test under Doggett, I think that the court actually can remand with instructions to dismiss, based on the fairly scanty evidence of the fact that the government did nothing in the field to look for the guy for 55 or 56 months. They made a couple of phone calls to the marshals, and when the information they got, they didn't follow up with. Thank you. Thank you, counsel. United States v. Reynolds is submitted.
judges: Thompson, Kleinfeld, Thomas